## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| THE ODESSA FAMILY YMCA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| INSOURCE INSURANCE GROUP, LLC, | § | CIVIL ACTION NO.: 7:19-cv-295 |
| DAN BRAZELTON, AND | § | |
| PHILADELPHIA INDEMNITY | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| | § | |
| Defendants. | § | |

## DEFENDANT PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendant Philadelphia Indemnity Insurance Company ("Philadelphia"), files this Notice of Removal pursuant to 28 U.S.C. §§ 1332, 1441 and 1446(a), and would show as follows:

### I.    INTRODUCTION

1.    Removal of this case is proper because the Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Specifically, the amount in controversy exceeds $75,000, the citizenship of Plaintiff The Odessa Family YMCA ("YMCA") is diverse from Philadelphia, and Defendants InSource Insurance Group, LLC ("InSource") and Dan Brazelton are improperly joined to defeat diversity.

### II.    PARTIES

2.    As alleged in Plaintiff's First Amended Petition, YMCA is a non-profit Texas entity with a principal place of business in Odessa, Texas. YMCA is accordingly a Texas citizen.

3.    Philadelphia is a corporation organized under the laws of the State of Pennsylvania

with its principal place of business in Bala Cynwyd, Pennsylvania.  Philadelphia is therefore a citizen of Pennsylvania.  (Ex. 2, ¶ 3)

4.       Defendants InSource and Brazelton are alleged to be Texas citizens, but they were improperly joined to defeat diversity.

## III.   FACTUAL HISTORY

5.       Philadelphia issued a commercial property insurance policy under number PHPK1520676 to YMCA with a policy period of July 1, 2016 to July 1, 2017.  (Ex. 2 at ¶ 7)  This case arises out of YMCA's claim under that policy for hail damage to its buildings as a result of a June 14, 2017 storm.  (Ex. 2 at ¶ 14)  By the end of 2017, Philadelphia had issued payments for repair of the hail damage to YMCA's buildings in the amount of $581,347.46, exclusive of code upgrades and depreciation.  (Ex. 2 at ¶ 15)  However, YMCA disputed that Philadelphia's estimate of repairs was accurate, and demanded appraisal on October 10, 2018.  (Ex. 2 at ¶ 18)

6.       Pursuant to policy language, YMCA and Philadelphia each selected an appraiser and the appraisers in turn selected an umpire, resulting in a three-person appraisal panel.  On April 17, 2019, an appraisal award was issued, signed only by YMCA's appraiser and the umpire.  (Ex. 2 at ¶ 21)  The replacement cost award on YMCA's building located at 3001 E. University Boulevard was $5,000,000 and the actual cash value award was $4,205,000.  (Ex. 2 at ¶ 22)  The underlying dispute between YMCA and Philadelphia is solely with regard to the amount of loss to the University Boulevard location.  (Ex. 2)

## IV.   PROCEDURAL HISTORY

7.       On November 26, 2018, YMCA filed an Application for Appointment of Umpire under Cause No. C-18-11-1710-CV in the 244th District Court for Ector County, Texas.  (Ex. 1.B)  YMCA never served Philadelphia with a copy of the Application for Appointment of Umpire, nor made any other attempt to notify Philadelphia of the Application.  (Ex. 1.A and Ex. 1.B)  On the

same day YMCA filed the Application, November 26, 2018, Judge Rush entered an Order Appointing Umpire, naming Jeremy Settles as umpire in the appraisal proceeding.  (Ex. 1.D)

8.      Philadelphia's appraiser made it aware of the Application and, on December 11, 2018, Philadelphia filed a Motion to Vacate Appointment of Umpire.  (Ex. 1.E)  The basis for the motion was that YMCA's appraiser and Philadelphia's appraiser had agreed to an umpire prior to YMCA filing its Application.  *Id.*  Recognizing that the appraisers had reached an agreement on the umpire, in accordance with the policy's appraisal provision, YMCA filed a Notice of Agreed Umpire Selection on January 2, 2019.  (Ex. 1.G)  Philadelphia therefore filed a Motion to Withdraw its Motion to Vacate on January 9, 2019, and the Court signed the Order of Withdrawal on January 10, 2019.  (Ex. 1.H and Ex. 1.I)

9.      On April 23, 2019, after receipt of the appraisal award, Philadelphia filed its Original Complaint for Declaratory Judgment in the United States District Court for the Western District of Texas, Midland/Odessa Division, where it was designated as Civil Action No. 7:19-cv-00107-DC. (Ex. 2)  Philadelphia seeks a judgment from the Court declaring it is not bound by the appraisal award because it was: (1) made without authority; (2) made as a result of fraud, accident, or mistake; and/or (3) not in compliance with the requirements of the policy.  (Ex. 2, ¶ 27)  Philadelphia also seeks a judgment from the Court declaring that it is not bound by the appraisal award to the extent it includes costs for damages that were neither caused by, nor related to, the hail storm of June 14, 2017, or that are excluded under the policy.  (Ex. 2, ¶¶ 28-29)

10.      On November 27, 2019, YMCA filed its First Amended Petition against Philadelphia, InSource, and Brazelton under Cause No. C-18-11-1710-CV in the 244th District Court for Ector County, Texas.  (Ex. 1.J)  This is the same cause number under which YMCA filed its Application for Appointment of Umpire, one year *and one day* earlier.  That amended pleading asserts causes of

action for breach of contract and extra-contractual claims against Philadelphia based on its refusal to pay the full amount of the appraisal award.  *Id.*

## V.      BASIS FOR REMOVAL

11.      This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a) because the properly named parties involved are citizens of different states, and the matter in controversy exceeds $75,000.00, exclusive of interest and costs.

### A.      The Application for Appointment of Umpire Was Not Removable.

12.      A case is removable under 28 U.S.C. § 1332(a) only if the controversy exceeds $75,000, exclusive of interest and costs.  "When removal is premised upon diversity jurisdiction and the parties dispute whether the amount in controversy exceeds $75,000, *see* 28 U.S.C. § 1332(a), courts must determine the amount in controversy in light of 'the claims in the state court petition as they existed at the time of removal.'"  *Espinoza v. Allstate Tex. Lloyd's*, 222 F. Supp. 3d 529, 533 (W.D. Tex. 2016).  "In general, the amount in controversy is determined by the amount sought on the face of the state court petition, so long as the claim is made in good faith."  *Id.*  (citing *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998)).

13.      Further, "if the initial pleading sets forth a claim that triggers the removal clock, the defendant must file notice of removal within thirty days of receiving it.  If the initial pleading did not trigger the thirty-day removal clock, a notice of removal must be filed within thirty days of the defendant's receipt of a document from which it may ascertain that the case is, or has become, removable."  *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397–98 (5th Cir. 2013).

14.      "[T]he thirty-day clock is not triggered unless the initial pleading 'affirmatively reveals on its face' that the plaintiff's sought damages exceed[ ] the jurisdictional amount."  *Mumfrey*, 719 F.3d at 400 (citing *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992)).  In other words, if the plaintiff "wishes the thirty-day time period to run from the defendant's receipt

of the initial pleading, [the plaintiff must] place in the initial pleading a specific allegation that damages are in excess of the federal jurisdictional amount." *Id.* at 399 (quoting *Chapman*, 969 F.2d at 163).

15.     The Application for Appointment of Umpire does not, in any way, "affirmatively reveal on its face" that YMCA sought monetary damages in excess of the jurisdictional amount.  In fact, YMCA does not seek any monetary damages or equitable relief in its Application.  The Application simply asks the Court to appoint an umpire so that appraisal of YMCA's hail damage could proceed pursuant to the policy's appraisal provision. (Ex. 1.B)  Accordingly, the Application for Appointment of Umpire did not trigger the start of the "thirty-day removal clock."

16.     The "thirty-day removal clock" was not triggered until YMCA filed its First Amended Petition on November 27, 2019, as that pleading seeks damages in excess of $3,000,000. (Ex. 1.J, ¶ 5.13)  Because Philadelphia filed this Notice of Removal within 30 days of November 27, 2019, the removal is timely.

> **B.     The Bad Faith Exception to the One Year Rule Applies.**

17.     "A case may not be removed . . . on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action."  28 U.S.C. § 1446(c)(1).  The one-year limit does not apply, however, if "plaintiff has acted in bad faith in order to prevent a defendant from removing the action."  *Id.*  The Fifth Circuit recently articulated the standard for the bad faith exception under section 1446(c)(1), noting that the previous articulation of the standard was based on a prior version of section 1446.  *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 294 (5th Cir. 2019), *as revised* (Aug. 23, 2019).

18.     In *Hoyt*, the court held that in the context of section 1446, bad faith is measured by determining "what motivated the plaintiff in the past—that is, whether the plaintiff's litigation conduct meant 'to prevent a defendant from removing the action.'"  *Id.* at 293.  There, the Fifth

Circuit affirmed the district court's conclusion that plaintiffs had acted in bad faith where the plaintiffs dismissed a non-diverse defendant just two days after the one-year removal deadline expired. *Id.* at 292.  They did so without receiving any consideration in return for the dismissal. *Id.* The record also reflected that, even though the plaintiffs knew for months prior to the dismissal that the evidence would not support a claim against the non-diverse defendant, the plaintiffs only "half-heartedly" pursued their claims against that defendant, waited until the one-year limit expired, and then dismissed the defendant "for free." *Id.* at 292–93.  Because the plaintiffs failed to explain why the settlement and dismissal occurred just two days after the deadline expired, the Fifth Circuit refused to find that the district court committed clear error when it concluded that the plaintiffs' conduct demonstrated their intent to prevent removal in bad faith. *Id.* at 293.

19. The facts here are remarkably similar to those in *Hoyt*.  YMCA filed its Application for Appointment of Umpire on November 26, 2018 and its First Amended Petition on November 27, 2019, ***the day after the one-year limit for removal***.  YMCA could have filed its breach of contract and extra-contractual claims at any point after Philadelphia filed its Complaint for Declaratory Judgment on April 23, 2019.  YMCA can present no legitimate reason for waiting to assert such claims.  YMCA undoubtedly made the decision to assert such claims as soon as Philadelphia filed its action, yet chose to wait until after the one-year anniversary of its filing of the Application of Appointment of Umpire, solely in an effort to prevent Philadelphia from removing this case to federal court.  Further, as discussed below, YMCA has added its local insurance agents as defendants to this action even though it cannot assert any viable claim against them.  YMCA's actions were undertaken solely to prevent Philadelphia from removing this case to federal court and are therefore in bad faith.

20.     Further, in *New York Life Insurance Co. v. Deshotel,* 142 F.3d 873, 885 (5th Cir.1998), the Fifth Circuit described the one-year rule as "a means of reducing the opportunity for removal after substantial progress has been made in state court."  Here, there has been no progress in the state court.  The only activity that has occurred, to date, is that the court agreed to appoint the umpire that YMCA's appraiser and Philadelphia's appraiser had previously agreed upon.

### C.     YMCA's Claims Are Compulsory Counterclaims

21.     Removal is further proper because there is a pending action in federal court to which YMCA's claims are compulsory counterclaims.  *See* Fed. R. Civ. P. 13.  As noted above, Philadelphia filed a declaratory judgment action in this Court on April 23, 2019, *Philadelphia Indemnity Insurance Company v. The Odessa Family YMCA*, Civil Action No. 7:19-cv-00107-DC in the United States District Court for the Western District of Texas, Midland/Odessa Division.  The declaratory judgment action arises out of the same claim and coverage issues as YMCA's state court suit filed six months later.

22.     The plain language of Rule 13 defines a counterclaim as "compulsory" if it (1) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and (2) does not require adding another party over whom the court cannot acquire jurisdiction.  *National Liability & Fire Ins. Co. v. R & R Marine*, 756 F.3d 825, 835 (S.D. Tex. 2014) (citing Fed. R. Civ. P. 13(a)(1)(A), (B)).  Courts also employ the logical relation test to "further define when a claim and counterclaim arise from the same transaction."  *Id.* (citing *Plant v. Blazer Fin. Servs., Inc. of Ga.*, 598 F.2d 1357, 1360 (5th Cir. 1979).  "The logical relation test is a loose standard which permits a broad realistic interpretation in the interest of avoiding a multiplicity of suits."  *Id.*  A logical relationship exists "when the counterclaim arises from the same 'aggregate of operative facts' in that the same operative facts serve[] as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant."  *Id.*

23.     YMCA's claims in this matter were compulsory counterclaims within the scope of Rule 13(a).  The claims arise out of the same occurrence that is the subject of Philadelphia's previously filed declaratory judgment action, namely, YMCA's claim for hail damage from the June 14, 2017 storm and the resulting appraisal to determine the amount of loss caused by that hail storm. Both suits seek a determination as to whether or not the appraisal award includes repairs for damage that were caused by the June 14, 2017 hail storm and are not otherwise excluded by the policy language and, ultimately, whether or not Philadelphia is liable to pay the appraisal award.  Further, as discussed below, YMCA's claims do not require adding InSource and/or Brazelton as parties because YMCA has asserted no valid claim against them.  Accordingly, YMCA claims in this matter were compulsory counterclaims that it was required to raise in the pending declaratory judgment action.

24.     Texas courts have reached the same conclusion in factually similar cases.  The *National Liability & Fire Insurance Co.* case involved a declaratory judgment action filed by National, contending there was no coverage under its policy for damages arising out of the sinking of a vessel while in a shipyard for repairs.  National named both its insured, the shipyard owner, and the underlying plaintiff, the vessel owner, as defendants.  The vessel owner counterclaimed against National, contending that the policy did provide coverage for his damages.  The court held that the vessel owner had standing to bring his counterclaim and that it was a compulsory counterclaim under FED. R. CIV. P. 13(a) because it arose out of the same occurrence as the subject of the declaratory judgment action and did not require adding another party over whom the court had no jurisdiction. *Nat'l Liab. & Fire Ins. Co.*, 756 F.3d at 835-36.  Likewise, in *Founders Insurance Co. v. Chmielewski*, 2016 WL 10731712, at *2 (S.D. Tex. May 4, 2016), which also involved a declaratory

---

judgment action seeking a finding of no duty to defend or indemnify, the court held that the defendant's counterclaim that Founders owed a defense was a compulsory counterclaim.

25.     YMCA's actions in filing its breach of contract and extra-contractual claims in state court, instead of asserting them as counterclaims in the pending declaratory judgment action, further supports Philadelphia's position that it is trying to avoid the jurisdiction of this Court in bad faith.

**D.     Complete Diversity Exists Because InSource and Brazelton are Improperly Joined.**

26.     A case that does not have complete diversity may be removed if the in-state defendants were named to destroy diversity, which is known as improper joinder. *Miller v. Allstate Texas Lloyd's*, No. CV H-17-1684, 2017 WL 3335997, at *2 (S.D. Tex. Aug. 4, 2017).  There are two ways to establish improper joinder: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court. *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004).  Philadelphia does not allege any fraud in the pleading of jurisdictional facts.

27.     Philadelphia does, however, allege that YMCA cannot establish a cause of action against the non-diverse defendants InSource and Brazelton.  To determine if YMCA can establish a cause of action against InSource and Brazelton, the Court may either utilize a Rule 12(b)(6)-type analysis or a summary judgment-type inquiry.  *Miller*, 2017 WL 3335997 at *2.  "Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Smallwood*, 385 F.3d at 573.  However, in certain cases, a plaintiff may have stated a claim but have "misstated or omitted discrete facts that would determine the proprietary of joinder."  *Id.*  In that case, the Court may pierce the pleadings and conduct a summary inquiry.  *Id.*  The procedure utilized—12(b)(6) or summary judgment—lies within the Court's discretion, but "a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery

against the in-state defendant." *Id.* at 573–74.

28.     Under the 12(b)(6)-type analysis, the Court must apply the federal pleading standard to the original state court pleading. *Miller*, 2017 WL 3335997 at *3.[1] "In considering Rule 12(b)(6) motions, courts generally must accept the factual allegations contained in the complaint as true." *Id.* Courts should "not look beyond the face of the pleadings" when determining whether the plaintiff has stated a claim under Rule 12(b)(6). *Id.* (quoting *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999)). Although detailed factual allegations are not required to prevail on a Rule 12(b)(6) analysis, a plaintiff must allege "more than labels and conclusions, and [ ] formulaic recitation[s] of the elements of a cause of action" to "provide the 'grounds' of his 'entitle[ment] to relief.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007)).

29.     The burden of proving improper joinder lies with the removing party and is a heavy one. *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981). The Court must "initially resolve all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party." *Dodson v. Spiliada Mar. Corp.*, 951 F.2d 40, 42 (5th Cir. 1992). Nevertheless, the Court "is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions." *Bart Turner & Assocs. v. Krenke*, No. 3:13-CV-2921-L, 2014 WL 1315896, at *4 (N.D. Tex. Mar. 31, 2014). Furthermore, in cases where both the insurer and its agent or broker are sued, the Court can consider that "given the relative financial positions of most [insurance] companies versus their . . . [agents], the only time an . . . [agent] is going to be sued is when it serves a tactical legal purpose, like defeating diversity." *Sohmer v. Am. Med. Sec., Inc.*, No. CIV.A. 3:02-CV-1680-, 2002 WL 31323763, at *2 (N.D. Tex. Oct. 15, 2002); see also *Plascencia v. State Farm Lloyds*, No. 4:14-CV-

---

[1] The Fifth Circuit has clarified that federal courts should apply the federal pleading standard for an improper joinder analysis. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 208 (5th Cir. 2016).

524-A, 2014 WL 11474841, at *5 (N.D. Tex. Sept. 25, 2014) (collecting the "long line of cases"

involving the suing of insurance agents or adjusters to improperly defeat diversity).

30.     InSource and Brazelton are YMCA's insurance agents.  (Ex. 1.J, ¶ 5.01)  YMCA,

with no factual basis, asserts the following causes of action against its agents: (1) violation of Texas

Insurance Code §§ 541.051, 541.060, and 541.061 (Ex. 1.J, ¶¶ 6.15-6.18 & 6.29-6.32); (2) violations

of the Texas Deceptive Trade Practices Act ("DTPA") (*id.* at ¶¶ 6.21-6.23); (3) breach of the duty of

good faith and fair dealing (*id.* at ¶¶ 6.19-6.20); (4) negligent misrepresentation (*id.* at ¶ 6.33); (5)

fraud (*id.* at ¶ 6.36); and (5) conspiracy (*id.* at ¶¶ 6.37-6.39).  A 12(b)(6)-type analysis of each claim

reveals that YMCA has no viable cause of action against either InSource or Brazelton.

1.     YMCA Fails to State a Claim for Violation of the Texas Insurance Code
       or DTPA

31.     To state a valid claim under the Texas Insurance Code, a plaintiff must show that (1)

a misrepresentation was made, issued, or circulated (2) with regard to either (i) the Policy's terms, or

(ii) its benefits or advantages.  *Miller*, 2017 WL 3335997, at *4.  Because Texas Insurance Code

claims are based on misrepresentations, courts require plaintiffs to satisfy the particularity

requirements of Rule 9(b), which require a plaintiff to (1) specify the statements contended to be

fraudulent, (2) identify the speaker, (3) state when and where the statements were made, and (4)

explain why the statements were fraudulent.  *Id.*; *Plascencia*, 2014 WL 11474841, at *4.

32.     To state a valid DTPA claim, YMCA must show that (1) it is a consumer, (2) that

InSource and Brazelton engaged in false, misleading, or deceptive acts which are either enumerated

in section 17.46 or relied on by YMCA to its detriment, and (3) that those acts were a producing

cause of YMCA' damages.  *Miller*, 2017 WL 3335997, at *4.  While the elements are different from

the Texas Insurance Code violations, the 12(b)(6) analysis is the same: YMCA must establish the

"who, what, when, where, and how" of the DTPA misrepresentation.  *Id.*; *see also Webb v. UnumProvident Corp.*, 507 F. Supp. 2d 668, 679 (W.D. Tex. 2005).

33.     Texas courts recognize a cause of action under the Texas Insurance Code and DTPA against an insurance agent "when the agent misrepresents specific policy terms prior to a loss, and the insured's reliance upon that misrepresentation actually causes the insured to incur damages.'" *Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir. 1999) (concluding that an agent's statements that plaintiff's claims would be handled professionally were "more in the nature of non-actionable puffery than actionable representations of specific material fact.")).  "[V]ague references to…alleged statements that [the plaintiff is] 'adequately insured' and 'covered by [the] peril' that affected [the] property do not constitute the actionable misrepresentations of material facts required to establish a DTPA claim, but are rather more akin to the 'non-actionable puffery.'" *Davis v. State Farm Lloyds*, No. 3:15–CV–0596–B, 2015 WL 4475860, at *5 (N.D. Tex. July 21, 2015) (citing *Griggs*, 181 F.3d at 701); *Carswell v. State Farm Lloyds*, No. 4:17-CV-149-A, 2017 WL 6054939, at *2 (N.D. Tex. Dec. 6, 2017) ("Of course, general assurances that a policy will be honored are not material misrepresentations under the Insurance Code.").

34.     In support of its claims, YMCA quotes and recites excerpts from the Texas Insurance Code and the DTPA.  (Ex. 1.J, ¶¶ 6.21-6.23 & 6.29-6.32)  These legal conclusions and boilerplate recitations of statutory language are insufficient to state a claim under either the Insurance Code or the DTPA. *Atl. Cas. Ins. Co. v. Primelending, A Plainscapital Co.*, No. 3:15-CV-1475-D, 2016 WL 1322235, at *4 (N.D. Tex. Apr. 5, 2016).   YMCA's pleading identifies only a few vague representations allegedly made by InSource and/or Brazelton: "from the time of the sale of the Policy to date, Defendants InSource and Brazelton have consistently expressly and/or impliedly assured Plaintiff that it was adequately insured and that the Insurer, Philadelphia was a reputable

insurance carrier that would abide by and comply with its insurance policy, which has certainly not been the situation."   (Ex. 1.J, ¶ 5.15)   These allegations do not constitute actionable misrepresentations of material facts under the Insurance Code or the DTPA because, even if the alleged statements and misrepresentations were made, they are nothing more than general assurances and non-actionable puffery.  *See Davis*, No. 3:15-CV-596-B, 2015 WL 4475860, at *5; *Griggs*, 181 F.3d at 701; *Bank One, Tex., N.A. v. Little*, 978 S.W.2d 272, 280 (Tex. App.–Fort Worth 1998, pet. denied) (holding imprecise or vague representation constitutes mere opinion and is not actionable misrepresentation under the DTPA); *Hedley Feedlot, Inc., v. Weatherly Trust*, 855 S.W.2d 826, 839 (Tex. App.–Amarillo 1993, writ denied) (holding imprecise statement not actionable misrepresentation under the DTPA); *Sohmer v. Am. Med. Sec., Inc*., No. CIV.A. 3:02-CV-1680-, 2002 WL 31323763, at *2 (N.D. Tex. Oct. 15, 2002) ("An insurance agent's statement that a policy will protect an insured is generally an expression of opinion, and opinion alone is not sufficient to support an action for fraud or misrepresentation."); *Druke v. Fortis Health*, No. 5:06–CV–00052, 2007 WL 38322, at *4 (S.D. Tex. Jan.4, 2007) (assurance that policy would be honored is not actionable statement under the DTPA).

35.    Moreover, by merely reciting verbatim from the Insurance Code and DTPA and failing to differentiate its agents' conduct from that of Philadelphia, YMCA fails to describe any actionable conduct by its agents.  See *TAJ Props., LLC v. Zurich Am. Ins. Co*., No. CIV.A. H-10-2512, 2010 WL 4923473, at *4 (S.D. Tex. Nov. 29, 2010); *see also Frisby v. Lumbermens Mut. Cas. Co*., No. H–07–015, 2007 WL 2300331, at *4 (S.D. Tex. Feb. 20, 2007) (finding that listing statutory provisions of the Insurance Code and stating that such provisions were violated by the insurance company and adjuster jointly "[did] not sufficiently separate those actions attributable to [the insurance company] from those of [the individual adjuster]").

36.     YMCA must also plead that InSource and/or Brazelton's conduct was the cause in fact of actual damages.  *Griggs*, 181 F.3d at 702.  This means that YMCA must identify a representation that is causally connected to the damages sustained.  *Id.*  Here, YMCA alleges that its damages are the result of Philadelphia's failure "to timely or promptly pay the full amount of the loss as determined by the Umpire's Appraisal Awards."  (Ex. 1.J, ¶ 5.13)  This is an issue that neither InSource not Brazelton, as the retail agents, control.  See *Plascencia*, 2014 WL 11474841, at *6 ("No facts are alleged that would plausibly lead to the conclusion that plaintiff suffered any damage by reason of [agent] Gallegos's conduct, bearing in mind that ultimately State Farm, not Gallegos, would have made the decision as to whether to pay, and what to pay, plaintiff.").

37.     For these reasons, YMCA failed to plead causes of action against either InSource or Brazelton for violations of the Texas Insurance Code or DTPA.

> 2.     <u>YMCA Fails to State a Claim for Breach of the Duty of Good Faith and Fair Dealing</u>

38.     YMCA asserts a cause of action for breach of the duty of good faith and fair dealing against InSource and Brazelton based on their alleged "failure…to adequately and reasonably investigate and evaluate YMCA's claims, although at that time Defendants knew or should have known by the exercise of reasonable diligence that their liability was reasonably clear..." (Ex. 1.J, ¶ 6.20)  Given that InSource and Brazelton are YMCA's insurance agents, they could not have been responsible for investigating and evaluating YMCA's claim for hail damage.

39.     Further, under Texas law, "the duty of good faith and fair dealing applies in limited circumstances involving a special relationship between the parties, such as between insurers and insureds, principal and agent, joint venturers, and partners."  *Holloway v. Wells Fargo Bank, N.A.*, No. 3:12–CV–2184–GBH, 2013 WL 1187156, at *20 (N.D. Tex. Feb. 26, 2013), *report and recommendation adopted*, No. 3:12–CV–2184–GBH, 2013 WL 1189215 (N.D. Tex. Mar. 22, 2013).

"The Texas Supreme Court has held that insurance agents who are not parties to the insurance contract or in privity with the insured do not owe a duty of good faith and fair dealing to the insured." *Lowe v. Whitehead Cargo LLC*, No. 4:09-CV-3570, 2011 WL 221871, at *3 (S.D. Tex. Jan. 20, 2011) (citing *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 697–98 (Tex. 1994)). "Since insurance agents and brokers are not contracting parties with the insured, there is no 'special relationship' giving rise to a duty of good faith and fair dealing." *Id.* (citing *Natividad*, 875 S.W.2d at 698).

40.     Because YMCA did not, and cannot, plead facts showing InSource and/or Brazelton are parties to the contract (the insurance policy), YMCA has not pleaded facts showing a special relationship exists between it, on the one hand, and InSource and Brazelton, on the other hand, that would give rise to a duty of good faith and fair dealing. *See Lowe*, 2011 WL 221871, at *3 (third-party defendant merely "produced" and "issued" the insurance policy, and thus, was not a party to the contract who owed the insured a duty of good faith and fair dealing).

41.     For these reasons, YMCA failed to plead a cause of action against either InSource or Brazelton for breach of the duty of good faith and fair dealing.

### 3.     YMCA Fails to State a Claim for Negligent Misrepresentation

42.     To state a claim for negligent misrepresentation, a plaintiff must establish that (1) the defendant made a representation in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). Further, the "false information" contemplated in a negligent misrepresentation case must be a misstatement

of existing fact, not a promise of future conduct. *Montgomery v. SunTrust Mortg., Inc.*, No. 3:10–CV–733–F, 2012 WL 1353087, at *6 (N.D.Tex. Apr.19, 2012) (quoting *Scherer v. Angell*, 253 S.W.3d 777, 781 (Tex.App.-Amarillo 2007, no pet.)).

43.     As noted above, YMCA's pleading identifies only a few vague representations allegedly made by InSource and/or Brazelton: "from the time of the sale of the Policy to date, Defendants InSource and Brazelton have consistently expressly and/or impliedly assured Plaintiff that it was adequately insured and that the Insurer, Philadelphia was a reputable insurance carrier that would abide by and comply with its insurance policy, which has certainly not been the situation." (Ex. 1.J, ¶ 5.15)

44.     These alleged general promises or representations that YMCA was adequately insured and that Philadelphia was a reputable insurance carrier that would comply with its insurance policy are wholly deficient to support a claim for negligent misrepresentation because, as a matter of law, such statements cannot be deemed "material misrepresentations." See *Druker v. Fortis Health*, 2007 WL 38322, at *4 (S.D. Tex. Jan. 4, 2007) (assurances that policy would be honored do not state DTPA, Insurance Code, fraud, or negligent representation claims as a matter of law); *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex.App.—Houston [14th Dist.] 1999, pet denied) (emphasis in original) (that a loss [some eight years in the future] will be promptly, quickly, and diligently handled is obviously a representation of future conduct). Courts find these types of statements to be "pre-purchase assurances to be expected from an insurance agent." *Griggs*, 181 F.3d at 701. In *Griggs*, the plaintiff alleged that the agent promised that plaintiff's claims would be handled "professionally." In finding that the agent was fraudulently/improperly joined, the court characterized the agent's statements as "more in the nature of non-actionable puffery than actionable representations of specific material fact." *Id.* at 700-01.

45.     Additionally, YMCA's negligent misrepresentation and fraud claims all require YMCA to show that its alleged injuries, if any, were "proximately caused" by or "resulted from" either InSource's or Brazelton's conduct.  See *Davis v. State Farm Lloyds*, 2015 WL 4475860, at *4 (N. D. Tex. July 21, 2015) (finding that the plaintiffs failed to state a plausible claim for negligent misrepresentation where their petition included the generic assertion that they incurred "actual damages, exemplary damages, interest, and court costs," but there were no allegations indicating what loss plaintiffs suffered and how such loss was caused by their justifiable reliance on the agent's misrepresentations); *Larsen v. Carlene Langford & Assoc., Inc*., 41 S.W.3d 245, 250 (Tex. App.—Waco 2001, pet. denied) (negligent misrepresentation); *McCulley Fine Arts Gallery, Inc. v. X Partners*, 860 S.W.2d 473, 483 (Tex. App.—El Paso 1993, no writ) (fraud).  YMCA has provided no evidence that its alleged injuries, if any, were either proximately caused by or resulted from any conduct on the part of either InSource or Brazelton.

46.     For these reasons, YMCA failed to plead a cause of action against either InSource or Brazelton for negligent misrepresentation.

### 4.      YMCA Fails to State a Claim for Fraud

47.     The elements of a fraud claim under Texas law are: "(1) a misrepresentation that (2) the speaker knew to be false or made recklessly (3) with the intention to induce the plaintiff's reliance, followed by (4) actual and justifiable reliance (5) causing injury." *Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P*., 620 F.3d 465, 468 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co*., 51 S.W.3d 573, 577 (Tex. 2001)).

48.     In support of its fraud claim, YMCA makes the following conclusory allegations: "Defendants…made one or more representations/assurances to YMCA.  Such representations/assurances were material and false.  When such representations/assurances were

made, Defendants knew the representations/assurances were false, or made them recklessly, and/or as a positive assertion, and without knowledge of its truth. Defendants made the representations/assurances with the intent that the YMCA act on it, which they did to their detriment by purchasing and keeping the Philadelphia Policy in issue in this case that is essentially worthless due to its failure to provide the benefits contained therein to the YMCA for its covered loss as set forth in the Umpire's Appraisal Awards. Plaintiff's reliance on the relied on representations/assurances caused damage to the YMCA." (Ex. 1.J, ¶ 6.36)

49.     As in the context of the negligent misrepresentation claim, the only factual allegations that could be linked to the fraud claim are those relating to the alleged statements that "Plaintiff…was adequately insured and that the Insurer, Philadelphia was a reputable insurance carrier that would abide by and comply with its insurance policy." (Ex. 1.J, ¶ 5.15) As these statements cannot constitute misrepresentations, they fail to state a claim for fraud. *Davis*, 2015 WL 4475860, at \*5 (citing *Weber Paradise Apartments, LP v. Lexington Ins. Co.*, 2013 WL 2255256, at \*6-8 (N.D. Tex. May 23, 2013) (applying the more liberal "fair notice" pleading standard and concluding that similar allegations failed to state a claim for fraud)).

50.     These threadbare allegations do not satisfy the specificity requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Allegations of fraud and all averments relating to the alleged fraud must meet the stricter standards of Rule 9(b) which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). The Fifth Circuit has reasoned that "[a]t a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Benchmark Elecs., Inc. v.*

*J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003), modified on other grounds, 355 F.3d 356 (5th Cir. 2003).

51.     For these reasons, YMCA failed to plead a cause of action against either InSource or Brazelton for fraud.

### 5.     YMCA Fails to State a Claim for Conspiracy

52.     YMCA also asserts a claim for civil conspiracy against all Defendants.  In support of its claim, YMCA vaguely alleges that "Defendants…reached a meeting of minds and acted in such a manner as to act knowingly and with reckless disregard for the Plaintiff in the course of handling of this subject claim, including making false statements, misrepresenting material facts, and engaging in actions and/or omissions for the purpose of misleading the YMCA as to their actual policy, prior claims, claim values, insurance benefits, coverages, contract terms, and damages resulting from the perils/losses related to any claim."  (Ex. 1.J, ¶ 6.37)

53.     Under Texas law, a civil conspiracy is "generally defined as a combination of two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means."  *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996).  A defendant's liability for civil conspiracy "is derivative of an underlying tort; without independent tortious conduct, there is no actionable civil conspiracy claim."  *Arthur W. Tifford, P.A. v. Tandem Energy Corp.* 562 F.3d 699, 709-10 (5th Cir. 2009) (citing *Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 381 (Tex.App.—Houston [1st Dist.] 2007, no pet.)).  Therefore, liability for civil conspiracy depends on participation in an underlying unlawful act.  *Tilton*, 925 S.W.2d at 681; *see also Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983).  As set forth above, because neither InSource nor Brazelton can be found liable for violations of the Texas Insurance Code, violations of the DTPA, breach of the duty of good faith and fair dealing, negligent misrepresentation, or fraud, YMCA's claim for conspiracy

fails as a matter of law. *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1195 (5th Cir. 1995); *Engstrum v. First Nat'l Bank of Eagle Lake*, 936 S.W.2d 438, 445 (Tex. App.—Houston [14th Dist.] 1996, writ denied).

54.     For these reasons, YMCA failed to plead a cause of action against either InSource or Brazelton for conspiracy.

### E.     The Amount in Controversy Exceeds $75,000

55.     The second requirement of diversity jurisdiction is that the amount in controversy exceeds $75,000. YMCA's First Amended Petition alleges damages in excess of $3,000,000. (Ex. 1.J, ¶ 5.13) A defendant may perfect a notice of removal based on allegations in the pleadings or facts in the notice. *Chapman v. Powermatic, Inc*., 969 F.2d 160, 163 n.6 (5th Cir. 1992). Thus, the amount in controversy requirement is met in this case.

## VI.     VENUE

56.     Venue for removal is proper in this district and division under 28 U.S.C. § 1441(a) because this district and division embrace the place in which the removed action was pending, Ector County, and the property that is the subject of the insurance claim is in Ector County.

## VII.     NOTICE AND CONSENT TO REMOVAL

57.     Philadelphia will file with the clerk of the state court, and will serve upon all parties, a notice of the filing of this Notice of Removal.

58.     Consent to removal from InSource and Brazelton is not required because they are improperly joined. See *Rico v. Flores*, 481 F.3d 234, 239 (5th Cir. 2007).

## VIII.   PROCEDURAL REQUIREMENTS

59.     Copies of all state court pleadings are attached to Exhibit 1, Index of Documents, as follows:

| EXHIBIT | DESCRIPTION |
|---|---|
| **A.** | Docket Sheet |
| **B.** | Application for Appointment of Umpire |
| **C.** | Civil Case Cover Sheet |
| **D.** | Order Appointing Umpire |
| **E.** | Motion to Vacate Appointment of Umpire |
| **F.** | Order Setting Hearing |
| **G.** | Notice of Agreed Umpire Selection and Motion to Appoint Mark Weeks |
| **H.** | Motion to Withdraw Motion to Vacate Appointment of Umpire |
| **I.** | Order Withdrawing Motion to Vacate Appointment of Umpire |
| **J.** | First Amended Petition |
| **K.** | Letter to Clerk Requesting Issuance of Citations |
| **L.** | Return of Service for InSource |
| **M.** | Return of Service for Brazelton |

## IX.   CONCLUSION

Defendant Philadelphia Indemnity Insurance Company respectfully requests that the above-captioned action now pending in the 244th Judicial District Court of Ector County, Texas be removed to the United States District Court for the Western District of Texas, Midland/Odessa Division.

Respectfully Submitted,

*/s/ Lisa M. Henderson*
LISA M. HENDERSON
State Bar No. 24025423
lisa.henderson@clydeco.us
L. KIMBERLY STEELE
State Bar No. 04127600
kimberly.steele@clydeco.us
CLYDE & CO US LLP
10440 N. Central Expressway, Suite 800
Dallas, TX  75231
Telephone:      214.540.7539
Facsimile:      214.540.7540

ATTORNEYS FOR DEFENDANT
PHILADELPHIA INDEMNITY INSURANCE
COMPANY

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above document has been served on all counsel of record via ECF Notification on this 20th day of December, 2019.

*/s/ Lisa M. Henderson*
LISA M. HENDERSON